IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THEODORE SOMACH and : | |
| INTERTEC EUROPE, SRL : | |
| : | CIVIL ACTION |
| Plaintiffs : | |
| v. : | CASE NO. |
| : | |
| PHIL FRAGASSO, : | |
| EMILY SOMACH, : | |
| REILLY SOMACH, and : | |
| JONATHAN FIRSTENBERG. : | |
| : | |
| Defendants. : | |

**ORIGINAL COMPLAINT**

Plaintiffs Theodore Somach and Intertec Europe SRL, (collectively "Plaintiffs"), by and through their undersigned counsel, for their Complaint against Defendants Phil Fragasso, Emily Somach, Reilly Somach and Jonathan Firstenberg (collectively "Defendants") allege based upon personal knowledge and relevant documents, as follows:

**I.   INTRODUCTION**

1.   Denny Somach Productions, based in the Philadelphia area, (hereafter "DSP") is one of the most successful independent producers of syndicated and network radio programming in the United States. Particularly, DSP content focused on rock and roll music and its collaborations and content goes all the way back to the 1960s and 1970s rock and roll era of The Beatles, The Rolling Stones, Led Zeppelin and similar rock and roll bands.

2.   DSP's landmark programming includes Legends of Rock, Great Moments In Rock (hosted by Bob Costas), Live from the Hard Rock Café for NBC, Rolling Stone

1

Magazine's Continuous History Of Rock and Roll for ABC, and Psychedelic Psnack for Westwood One, and many others. Specifically, DSP content includes rare audio and video interviews with numerous rock and roll legends.

3. Plaintiff Theodore Somach is the son of Denny Somach and his former partner in DSP and other related ventures. Theodore Somach was actively involved in DSP, both in conducting interviews and producing content but also in managing the business of DSP. Moreover, Plaintiff Theodore Somach purchased the rights from DSP to all of the copyrighted content in controversy in this case in 2013 and Plaintiffs are now the current global rights owners of said content.

4. As part of Plaintiffs' focus on the history of rock and roll music, both in retrospective and as it was actually happening, Plaintiffs have spent decades accumulating valuable and original content pertaining to the history of rock and roll music. Such content is particularly of value at the present time with the proliferation of digital media outlets, including Apple Music, Amazon Music, Tidal, YouTube, Spotify, etc., along with traditional physical distribution channels such as Terrestrial radio, Satellite radio (Sirius/XM), television programming and licensing, etc. These entities broadcast and sell access to podcasts, interviews and other types of original content of the types that Plaintiffs possess.

5. Plaintiffs own and/or control the exclusive rights to the copyrights of all of its content. Plaintiffs own the exclusive rights to possess, control, sell and license all of its copyrighted content. The sale of content that is owned, based on or copies from the original content of Plaintiffs violates their exclusive rights under the federal Copyright Act, 17 U.S.C §101, et seq.

6.      Defendants Phil Fragasso, Emily Somach Reilly Somach and Jonathan Firstenberg have collectively possessed, used, and licensed and sold Plaintiffs' copyrighted content to third-parties in an unauthorized manner and in blatant violation of Plaintiffs' legal rights as owners of said content. Plaintiffs have numerous times made both written and verbal requests and demands to each of the Defendants to cease and desist from using Plaintiffs' copyrighted content. Thus far, Defendants have ignored Plaintiffs' warnings and requests and have continued to use Plaintiffs' content in clear violation of Plaintiffs' legal rights as owners of said content.

7.      Defendants' infringement has harmed Plaintiffs and diminished the value of Plaintiffs' copyrighted content, as well as causing Plaintiffs an enormous loss of revenue from Plaintiffs' inability to sell and market said content. If left unchecked, Defendants will continue to infringe and cause damage. Accordingly, Plaintiffs bring this lawsuit against Defendants to both stop this infringement and to recover damages for the legal harms caused by Defendants.

**II.     PARTIES**

8.      Plaintiff Intertec Europe SRL, a VAT Registered Corporation, is headquartered in Bucharest, the capital city of the European Union member state of Romania.

9.      Plaintiff Theodore Somach is an adult individual who currently resides in the European Union, but was born, raised and formerly resided in the Philadelphia area and within this judicial district. Plaintiff Somach's former Pennsylvania corporations TWS Holdings, LLC and Entertainment Distribution Group, Inc. were the prior owners and rights holders of DSP content.

10. Defendant Phil Fragasso is an adult individual who resides in the Commonwealth of Massachusetts.

11. Defendant Emily Somach is an adult individual who resides in the State of Maryland.

12. Defendant Reilly Somach is an adult individual who resides in the Commonwealth of Massachusetts.

13. Defendant Jonathan Firstenberg is an adult individual who resides in the State of California.

### III. JURISDICTION AND VENUE

14. This is a civil action in which the Plaintiffs seek injunctive relief and damages under the Copyright Act, 17 U.S.C. §101, et seq. As such, the Court has original jurisdiction over Plaintiffs' copyright infringement claims pursuant to the federal question jurisdiction provisions of 28 U.S.C. §§ 1331 and 1338(a).

15. This Court has personal jurisdiction over Defendant Phil Fragasso because Fragasso systematically transacts business in Pennsylvania, committed tortious acts in Pennsylvania, and Plaintiffs' claims arise from those activities. In particular, Defendant Fragasso obtained the property in controversy in this matter from Kathleen Somach, a former resident of Pennsylvania who transported the physical property from Pennsylvania to Massachusetts after stealing it from the DSP office in Havertown, Pennsylvania. Defendant Fragasso is aware that the property is rightfully owned by Theodore Somach and his companies all of which were based in the Philadelphia area in Pennsylvania.

16. This Court has personal jurisdiction over Defendant Emily Somach because Emily Somach formerly resided in Pennsylvania, committed tortious acts in Pennsylvania,

and Plaintiffs' claims arise from those activities.

17. This Court has personal jurisdiction over Defendant Reilly Somach because Reilly Somach formerly resided in Pennsylvania, committed tortious acts in Pennsylvania, and Plaintiffs' claims arise from those activities.

18. This Court has personal jurisdiction over Defendant Jonathan Firstenberg because Firstenberg committed tortious acts in Pennsylvania, and Plaintiffs' claims arise from those activities. Specifically, Firstenberg made unsuccessful solicitations to Denny Somach in the Commonwealth of Pennsylvania to obtain the rights to the content he is now illegally using.

19. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because Defendants conduct, transact and/or solicit business in this District, and a substantial portion of the acts of copyright infringement and other events and omissions alleged herein occurred in this judicial District.

**IV.    GENERAL ALLEGATIONS**

   **1.    Plaintiffs Accumulate Decades Of Valuable Audio And Video Music and Music Interview Content.**

20. Over several decades of a career involved with and associated with the music industry, and in particular the "rock-and-roll" music industry of the 1960s through the 1990s, Denny Somach accumulated unique and rare music-related content of that time period. Most specifically, Denny Somach obtained and recorded lengthy interviews of legendary rock-and-roll singers, musicians and bands contemporaneous with the height of their stardom.

21. Denny Somach's career entailed several pursuits related to the music

industry. During the late 1970s and early 1980s, Somach was a disc-jockey and program director at famous then rock-and-roll radio station WYSP-FM in Philadelphia.

22. Given that WYSP-FM (along with WMMR-FM) was one of only two dominant rock-and-roll radio stations in the Philadelphia area, it was commonplace for the most popular rock and roll bands to use WYSP-FM to promote area concert appearances and new release of record albums or singles. Oftentimes, promotion of concerts or the release of new music involved bands and performers giving interviews to Denny Somach because of his prominence in the Philadelphia rock-and-roll music scene during the 1960s through the 1980s.

23. In 1981, Denny Somach started his own independent production company called Denny Somach Productions ("DSP"). Over several decades, DSP produced numerous successful radio programs, some of which were widely syndicated on national radio stations. Moreover, with the advent of cable television and in particular the cable TV channel MTV in the early 1980s, Denny Somach and DSP became more involved in producing video content for cable television, including programs for MTV, Cable Music Channel and NBC.

24. For each item of music and interview content accumulated by Plaintiffs, Plainitffs have invested substantial sums of money, time, expertise, industry knowledge and contacts in the rock-and-roll industry, and creative talent to produce and develop such content, which are protected by copyright.

25. Plaintiffs invest significant resources to advertise and promote its content worldwide. More broadly, Plaintiffs have invested decades of effort accumulating extremely rare and unique music content that remains of interest to generations of rock-

and-roll music fans.

26. With the proliferation of music streaming and podcast content subscription services such as Apple Music, Amazon Prime and Spotify, Plaintiffs' music and interview content is more valuable now than ever.

27. The revenues from Plaintiffs' licensing of its content is important to their financial health and continued investment in developing and promoting its content.

**2. Defendants And Their Infringing Conduct.**

28. Most of the Defendants are related to Plaintiff Theodore Somach either biologically (in the case of Emily and Reilly Somach who are siblings of Theodore Somach) or by marriage (Phil Fragasso is the third husband of Plaintiff Somach's mother, Kathleen Somach, and knew her less than three years before she died of terminal brain cancer).

29. All of the Defendants took advantage of family turmoil within the Somach family following the divorce of Denny and Kathleen Somach, as well as Kathleen Somach's terminal brain cancer, to take unauthorized possession of a substantial amount of music and interview content that exclusively belongs to the Plaintiffs. Specifically, Defendant Emily Somach took unauthorized possession of several master tapes of music and music interview content and continues to possess said content although she has no legal right to possess, use or license said content.

30. Additionally, Defendant Phil Fragasso and Reilly Somach have had unauthorized possession and use of Plaintiffs' music and music interview content and have financially benefited by exploiting said content for their own financial gain in violation of

federal copyright laws.

31. Defendant Jonathan Firstenberg attempted to get Denny Somach to sign an agreement releasing his rights to the use of some of the copyrighted materials in controversy in this case, but Denny Somach refused to sign any such agreement. Denny Somach further advised Defendant Firstenberg that his ex-wife Kathleen Somach and her then husband (Defendant Fragasso) did not have the rights to use the material in controversy.

32. Defendant Firstenberg ignored Denny Somach's warning and has illegally used the content in question anyway. Currently, Firstenberg and his company 3ear Music are illegally selling Plaintiffs' interview content as NFTs (Non-Fungible Tokens) on a website titled "Voices of Classic Rock -Prized Conversations" found at vocr.org.

33. The infringement of Plaintiffs' copyrights on Plaintiffs' content is widespread and systematic. Defendants directly infringed upon Plaintiffs' exclusive rights of reproduction, licensing and distribution to the public in violation of 17 U.S.C. §§ 106(1)-(3).

34. Defendants' ongoing infringement of Plaintiffs' copyrights harms Plaintiffs in many ways. Specifically, Defendants' conduct has deprived Plaintiffs of use and possession of several items of content, including master tapes, that rightfully belong to the Plaintiffs. Moreover, Defendants' unauthorized use and licensing of Plaintiffs' content has devalued said content and diverted revenues to Defendants that rightfully belonged to Plaintiffs.

### COUNT ONE

### All Plaintiffs vs. All Defendants

### Direct Copyright Infringement – Unauthorized Reproduction
### 17 U.S.C. § 106(1)

35. Plaintiffs incorporate by reference and re-allege all of the foregoing paragraphs as if fully set forth herein.

36. Plaintiffs' audio and video interview content and all associated and relative exploitable derivative mediums, past, present and future, constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §101, et seq.  At all relevant times, Plaintiffs have been and still are the owners of all rights, title and interest in and to its copyrights in these works.

37. Defendants have copied and reproduced Plaintiffs' copyrighted audio and video content without authorization.

38. As detailed above, Defendants, without permission or consent of Plaintiffs, have made unauthorized reproductions of Plaintiffs' work.  Such activity constitutes infringement of Plaintiffs' copyrights and exclusive rights under copyright in violation of the Copyright Act, 17 U.S.C. §§ 106(1), and 501.

39. Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious and willful.  As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been and will continue to be damaged.

40. Defendants' actions described above, which are ongoing, have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no

remedy at law.  Unless Defendants are restrained by this Court from continuing its infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

## COUNT TWO

### All Plaintiffs vs. All Defendants
### Direct Copyright Infringement – Unauthorized Derivative Work
### 17 U.S.C. § 106(2)

41. Plaintiffs incorporate by reference and re-allege all of the foregoing paragraphs as if fully set forth herein.

42. Plaintiffs' audio and video interview content and all associated and relative exploitable derivative mediums, past, present and future, constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §101, et seq.  At all relevant times, Plaintiffs have been and still are the owners of all rights, title and interest in and to its copyrights in these works.

43. Defendants have prepared unauthorized derivative works from Plaintiffs' copyrighted audio and video content without authorization.

44. As detailed above, Defendants, without permission or consent of Plaintiffs, have made unauthorized derivative works based on Plaintiffs' original works. Such activity constitutes infringement of Plaintiffs' copyrights and exclusive rights under copyright in violation of the Copyright Act, 17 U.S.C. §§ 106(2), and 501.

45. Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious and willful.  As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been and will continue to be damaged.

46. Defendants' actions described above, which are ongoing, have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless Defendants are restrained by this Court from continuing its infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

## COUNT THREE

### All Plaintiffs vs. All Defendants
### Direct Copyright Infringement – Unauthorized Distribution
### 17 U.S.C. § 106(3)

47. Plaintiffs incorporate by reference and re-allege all of the foregoing paragraphs as if fully set forth herein.

48. Plaintiffs' audio and video interview content, primarily physical cassette tapes, mini discs, CDs and digitized/derivative formats (i.e. written text) constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §101, et seq.  At all relevant times, Plaintiffs have been and still are the owners of all rights, title and interest in and to its copyrights in these works.

49. Defendants have distributed Plaintiffs' copyrighted audio and video content without authorization.

50. Defendants have distributed derivative works based on Plaintiffs' copyrighted audio and video content without authorization including in the form of NFT's via the website VOCR.org, short for "Voices of Classic Rock-Prized Conversations."

51. As detailed above, Defendants, without permission or consent of Plaintiffs, have made unauthorized distributions of Plaintiffs' work and derivative works based on Plaintiffs' content. Such activity constitutes infringement of Plaintiffs' copyrights and exclusive rights under copyright in violation of the Copyright Act, 17 U.S.C. §§ 106(3), and 501.

52. Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious and willful. As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been and will continue to be damaged.

53. Defendants' actions described above, which are ongoing, have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless Defendants are restrained by this Court from continuing its infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement.

**JURY DEMAND**

54. Plaintiffs demand trial by jury on all claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seek relief from this Court as follows:

(a) Judgment in favor of the Plaintiffs on each of the counts set forth above, including a ruling that Defendants' conduct was intentional and willful;

(b) An Order requiring Defendants to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts alleged above, including Plaintiffs' actual damages and Defendants' profits from the infringement, or in the alternative, statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. §504;

(c) An Order enjoining Defendants and all persons who are in active concert or participation with the Defendants from further infringing upon Plaintiffs' copyrights, pursuant to 17 U.S.C. §502;

(d) Plaintiffs' costs and attorney's fees, 17 U.S.C. §505;

(e) Prejudgment and post-judgment interest at the applicable rate;

(f) For all such other relief as the Court deems just and proper.

Respectfully Submitted,

**McCAFFERTY LAW FIRM, LLC**

**/s/ Brian P. McCafferty**

_____
BRIAN P. MCCAFFERTY, ESQUIRE
PA Bar No. 66257
117 Swamp Road
Newtown, PA 18940
Telephone: 267-872-0852
E-Mail: cafstar@aol.com

**Attorneys for Plaintiffs**

**Dated: July 18, 2022**