IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THEODORE SOMACH, INTERTECH EUROPE SRL** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO.  22-2775 |
| | : | |
| **JONATHAN FIRSTENBERG, EMILY SOMACH, REILLY SOMACH, PHIL FRAGASSO** | : : | |

# MEMORANDUM

**MURPHY, J.**                                                                                               **March 25, 2024**

Jonathan Firstenberg seeks summary judgment on copyright infringement claims brought by Theodore Somach.  The copyright claims pertain to a collection of interviews featuring popular rock artists.  Theodore claims that Mr. Firstenberg, along with Theodore's siblings and another related individual, infringed his rights to the interview collection.  Mr. Firstenberg argues that not only are some of the copyrighted works that Theodore claims ownership of not registered with United States Copyright Office, but Theodore also has no proof that he owns or was transferred ownership of the works.

We agree with Mr. Firstenberg.  There is no evidence that the works at issue were ever registered with the United States Copyright Office.  And for the works created outside the United States, there is no genuine dispute as to whether Theodore has any ownership interest in the works.  He does not.  To demonstrate ownership, Theodore relies on his own interpretation of provisions of a settlement agreement between him and his father, who he used to do business with.  But the provisions do not refer to Theodore having any kind of copyright ownership rights.  What's more, Theodore does not dispute that does not have any documents or testimony that establish his ownership to the copyrighted works.

Therefore, we grant Mr. Firstenberg's summary judgment motion.

I. **Background**[1]

*The basis for Theodore's claim to the copyrighted works.*

Theodore Somach[2] is the son of Dennis "Denny" Somach. DI 57-1 at 2 ¶ 3. Theodore assisted with his father's music company, Denny Somach Productions (DSP). *Id.* at 12 ¶ 6. DSP "conducted interviews with musicians." *See id.*

DSP's interview collection is referred to as the Voices of Classic Rock (VOCR) collection. *Id.* at 11 ¶ 2. Some of the musicians interviewed include Paul McCartney, Mick Jagger, and Pete Townsend. *Id.* at 14-15 ¶ 17. And some of the interviews were recorded outside of the United States. *See id.*

Theodore and Denny worked together for several years, but their business relationship deteriorated in 2016. *See id.* at 12-13 ¶ 11. They, along with other business entities they owned or worked with,[3] resolved their differences through settlement in 2018. *See id.* at 13-14 ¶¶ 13-16. Theodore did not draft the settlement agreement or hire an attorney to represent him during

---

[1] We derive this case's facts from (i) the facts submitted by Mr. Firstenberg that Theodore does not dispute, *see* DI 56-2, (ii) to the extent there is a genuine dispute of material fact, Theodore's version, *see* DI 57-1; Fed. R. Civ. P. 56, and (iii) Theodore's supplemental statement of material facts, *see* DI 57-1.

[2] Theodore is the plaintiff along with Intertec Europe SRL — the foreign company that he owns. *See* DI 57-1 at 12 ¶ 5. To streamline our discussion, we will refer to only Theodore when discussing both plaintiffs in this case. And because this case involves family members sharing the same last name, we will refer to members of the Somach family by first name.

[3] Theodore and Denny were not the only parties involved in the settlement; the settlement agreement references different companies owned by Theodore and Denny, as well as a distribution company that the Somachs worked with: Music Video Distributors, Inc. (MVD). *See* DI 57-1 ¶¶ 7-10, 13.

2

its negotiation. *See id.* at 13 ¶ 14. Relevant to this case, the settlement agreement stated:

> **(3) INVENTORY.** MVD agrees to ship (at the recipient's expense) within seven (7) business days after execution of this Agreement, any unsold or unreturned inventory to: Theodore Somach . . . less one (1) approximate 30 count box of each product (if available) to Denny Somach at the above address. In addition, MVD, as an additional accommodation, agrees to waive ordinary storage fees associated with such Inventory up until August 10, 2018. Notwithstanding this, in the event that Theo does not collect the Inventory within seven (7) business days after the full execution of this Agreement, Theo agrees that he shall be deemed to have surrendered the Inventory and shall make no further claim to it.
>
> **5(b) Theo's Assignment.** Denny and Theo hereby represent and warrant that Theo previously assigned and transferred on or around May 15, 2017, One Hundred (100%) Percent of Theo's rights to receive revenue under the EDG, and TWS Agreements to Denny, now and in the future from any and all sources, under the EDG, and TWS Agreement in perpetuity to Denny.
>
> <u>Denny's Assignment back to Theo/Irrevocable Letter of Direction regarding Royalties and Payments.</u> This Release shall also serve as an IRREVOCABLE LETTER OF DIRECTION to MVD, to pay Twenty (20%) Percent of all such revenue earned under the TWS and EDG Agreements in perpetuity to Theo by ACH to Theodore Somach . . . . For the sake of clarity, Theo shall receive **$4,949.57** and Denny shall receive **$19,705.80** on full execution of this Agreement.
>
> **5(c) MVD:** (i) agrees to Switch the Roger Waters and Paul Stanley product . . . from the Music Expo account to TWS Holdings; (ii) warrants that it has ceased distributing and selling the Roger Waters and Paul Stanley products and all products owned and controlled by TWS Holdings and Entertainment Distribution Group; (iii) upon execution of this Agreement, agrees to send digital takedowns to any remaining vendors and retailers, provided that if any vendors or retailers fail to promptly do so, it shall not be construed as a breach of this Agreement by MVD, and, provided that MVD shall not be required to issue any recalls on physical product. The outstanding balances open for Roger Waters and Paul

Stanley combined equals $18.50.  *See* DI 57-4.

### *Theodore sues for copyright infringement.*

Theodore sued Emily and Reilly Somach,[4] Phil Fragasso, and Jonathan Firstenberg for infringing his purported interest in the VOCR collection. *See* DI 57-1 at 1-2 ¶ 1. Mr. Firstenberg marketed and sold the VOCR collection without Theodore's permission. *See id.* at 11 ¶ 3. In addition, Mr. Firstenberg helped sell "a non-fungible token . . . using the VOCR content." *Id.* at 11 ¶ 4.[5]

Three individuals intervened later in Theodore's lawsuit and claimed that they own the VOCR interview collection — not Theodore. *See generally* DI 35.[6] After entering the case, they propounded discovery requests on Theodore to better understand his claim of ownership. *See* DI 56-2 ¶¶ 4, 8, 15, 18. For example, Intervenors requested

> all documents that [Theodore] claim[s] prove[s] [his] ownership or other rights in the [sic] "the copyrighted content in controversy in this case," as alleged at paragraph 3 of [his] Original Complaint. Such requested documents include all documents by which [Theodore] purchased or otherwise acquired any of the

---

[4] Emily and Reilly Somach are Theodore's siblings. *See* DI 57-1 at 1-2 ¶ 1.

[5] One might ask some follow-up questions to best understand what is going on here, such as (i) how did Theodore come to know of Mr. Firstenberg, (ii) how did Mr. Firstenberg come in contact with the VOCR interview collection, or DSP generally, (iii) why did Theodore also sue his siblings and Phil Fragasso, (iv) when did Mr. Firstenberg market and sell the VOCR collection in relation to Theodore's 2018 settlement agreement with Denny, or (v) why did Mr. Firstenberg think it was legal to market and sell materials that Theodore claims ownership of? The statements and counterstatements of facts set forth by both parties leave gaps in the story of this case. Federal Rule of Civil Procedure 56 does not allow us to fill the gaps on our own. We are left with only the parties' statements of fact and evidence supporting such statements.

[6] Counsel for Intervenors is the same as counsel for Mr. Firstenberg.

"copyrighted content" as alleged.

*Id.* ¶ 5.

In response, Theodore produced the 2018 settlement agreement and "several dozen e-mails" that he says "established his ownership of the VOCR content." DI 57-1 at 3 ¶ 7. When asked to produce documents supporting his allegation that he purchased the rights to the VOCR collection from DSP, Theodore responded with his own declaration, which he believes establishes ownership. *See id.* at 7 ¶ 20. Other than his own declaration that he says "explains the terms of the MVD Settlement Agreement," Theodore does not dispute that he has not provided evidence of him owning, registering, or being transferred a copyrighted work from DSP. *Id.* at 10 ¶ 28 (citing DI 57-3).

## II.   Mr. Firstenberg's Motion for Summary Judgment

Mr. Firstenberg advances two arguments. *See generally* DI 56-1. First, he argues that Mr. Somach has not "identified the copyrighted works [he] allegedly own[s]." *Id.* at 13. A "precondition" of a copyright infringement claim, according to Mr. Firstenberg, is a registered copyright, and in this case, Mr. Somach has not shown that one exists. *Id.* at 11 (quoting *Browne v. Zaslow*, 103 F. Supp. 3d 666, 671 (E.D. Pa. 2015)). Second, he argues that Theodore has no evidence that he bought or was transferred ownership rights to the VOCR collection. *Id.* at 15.

In response, Theodore argues that he does not need a copyright registration for at least sixteen of the interviews in the VOCR collection because they were recorded in Europe. *See* DI 57 at 11. And despite admitting that the 2018 settlement agreement between he and Denny "was not drafted in clear terms," Theodore insists that it "establish[es] ownership of the . . . interview

5

collection." *Id.* at 15-6.[7]

We have subject-matter jurisdiction over Theodore's causes of action. *See* 28 U.S.C. § 1331. We heard oral argument on Mr. Firstenberg's motion. *See* DI 60.[8] The motion is ripe for disposition. For the reasons set forth below, we grant Mr. Firstenberg's motion.

---

[7] Theodore also argues that, under Federal Rule of Civil Procedure 56(d), his inability to depose his father Denny precludes summary judgment for Mr. Firstenberg. *See* DI 57 at 16-18. His opposition states that his counsel planned to depose Denny, but Denny "reneged on his agreement to appear for a deposition" for purportedly questionable reasons. *See id.* at 17. Because Mr. Firstenberg relies in part on a declaration from Denny to support his summary judgment motion, Theodore argues that he deserves the chance to depose Denny "prior to making a decision on [Mr. Firstenberg's] motion." *Id.*

In reply, Mr. Firstenberg argues that "nothing that [Denny] can testify about will change" the language of the provisions that Theodore relies on from the 2018 settlement agreement. DI 58 at 6-7. Further, and at oral argument, Mr. Firstenberg confirmed that we do not need to rely at all on Denny's sworn declaration to grant judgment as a matter of law on Theodore's copyright infringement claims.

We agree with Mr. Firstenberg and will therefore not consider the argument. *See Pa., Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012) ("We have interpreted [Rule 56(d)] to require 'a party seeking further discovery in response to a summary judgment motion [to] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" (second alteration in original) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 139-40 (3d Cir. 1988))). Further, Theodore could have easily moved to compel Denny's deposition before the close of fact discovery if he wanted to use Denny's testimony to corroborate his own explanation of the 2018 settlement agreement. But he did not.

[8] At oral argument, two of the other defendants attended: Emily Somach and Phil Fragasso. They both confirmed that they join in Mr. Firstenberg's summary judgment motion. Our ruling has plain consequences and equally affects the claims against Reilly Somach.

### III.     <u>Analysis</u>[9]

Only the VOCR interviews recorded outside the United States remain at issue.[10] Theodore appears to concede in his response that he has no evidence of registration for the allegedly copyrighted works recorded in the United States. *See* DI 57 at 11-12.[11] And "[b]efore pursuing an infringement claim in court . . . a copyright claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.' . . . . [R]egistration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (citation omitted) (quoting § 411(a)).

Thus, for the interviews recorded outside the United States,[12] we must decide if a genuine

---

[9] We must grant summary judgment if Mr. Firstenberg "shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[F]or a factual dispute to be material, its resolution must have the potential to affect the outcome of the suit." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 203 (3d Cir. 2022). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' but 'the mere existence of a scintilla of evidence' favoring the non-moving party will not prevent summary judgment." *Id.* at 203-04 (citations omitted) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)).

[10] *See* 17 U.S.C. § 411(a) ("Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any *United States work* shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." (emphasis added)).

[11] At oral argument, counsel for Theodore suggested that if the motion for summary judgment were denied, the claims relevant to the other records could remain in the case. We need not decide that question.

[12] *See Notte v. New Sushi, LLC*, 2024 WL 706783, at *1 n.2 (D.N.J. Feb. 20, 2024) (quoting *Sadhu Singh Hamdad Tr. v. Ajit Newspaper Mktg. & Commc'ns, Inc.*, 503 F. Supp. 2d 577, 584 (E.D.N.Y. 2007)) ("Pursuant to the Copyright Act, statutory damages are unavailable for unregistered works, 17 U.S.C. § 412 . . . . However, as a foreign copyright holder, Plaintiff

7

dispute of material fact exists as to whether Theodore was transferred ownership of part of the VOCR interview collection. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original."); 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.").

Theodore does not dispute that he lacks documentary evidence to support his ownership claim. DI 57-1 at 10 ¶ 28. He relies solely on his own explanation of three provisions of the 2018 settlement agreement (reproduced above). *See* DI 57 at 13-16. And Theodore himself says that the settlement "was not clear[] in terms of the agreements reached between he and his father." *Id.* at 15.

At best, Theodore argues that he obtained ownership rights of the VOCR content "[i]n exchange for giving up 80% of the distribution revenues to" Denny. *Id.*[13] But the admittedly vague settlement agreement does not at all reference transferring ownership of any copyrighted content to Theodore. On its own, the agreement and Theodore's self-serving explanation fall

---

may seek actual damages, as 'the Berne Convention does not require the owner of a foreign copyright to register in the United States before seeking redress for infringement of works originating in foreign nations . . . that are signatories to the convention.'").

[13] Whether the provisions of the 2018 settlement agreement transferred ownership to Theodore is a question requiring interpretation of the settlement agreement, for which we would have to apply Pennsylvania law. *See* DI 57-4 ¶ 7 (settlement agreement's Pennsylvania law provision). Neither party briefed us on the application of Pennsylvania law and its effect (if any) on whether the agreement purports to transfer ownership to Theodore. So, we will not engage in a discussion of Pennsylvania contract interpretation and whether it bolsters or weakens Theodore's argument.

exceedingly short of showing Theodore has any ownership rights to the VOCR content.

## IV.     Conclusion

Theodore has no evidence that he owns or was transferred ownership rights to any recordings in the VOCR collection, thus, we grant Mr. Firstenberg judgment as a matter of law. For the reasons explained, judgment as a matter of law is granted with respect to the claims against Emily Somach, Reilly Somach, and Phil Fragasso as well.